UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| INGRID BARBEE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 2:17-CV-193-PPS-JPK |
| | ) | |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is an old case that was reassigned to me late last year. [DE 190.] It is one of a series of related toxic tort lawsuits brought in this district by various groups of East Chicago residents.[1]  With one exception (the *Alvarez* case), all of these matters have yet to proceed past the pleading stage. The plaintiffs in this case are 19 former residents of the West Calumet Housing Complex or attendees of Carrie Gosch Elementary School in East Chicago. Plaintiffs claim various entities negligently exposed them to harmful levels of lead, arsenic, and other toxins by introducing these hazardous materials decades ago on land adjacent to West Calumet and Carrie Gosch.

---

[1] *See Holiday et al. v. Atlantic Richfield Company*, No. 2:16-CV-525 (Dec. 20, 2016); *Baker et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-429 (Nov. 15, 2017); *Alvarez et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-414 (Oct. 31, 2017); *Adams et al. v. Atlantic Richfield Company et al.*, No. 2:18-CV-375 (Oct. 4, 2018). *See also S.A. et al. v. E.I. Du Pont de Nemours and Co. et al.*, No. 2:22-CV-359 (Nov. 22, 2022). In addition to the matters pending before this Court, I am advised that a group of the plaintiffs are separately pursuing claims against the City of East Chicago and various other state and municipal entities, as part of two consolidated actions currently pending in Lake Superior Court. *See G.J.2 et al. v. Indiana State Dept. of Health, et al.*, No. 45D05-1803-CT-3 (Mar. 13, 2018). In state court, the plaintiffs assert that the government knowingly and intentionally constructed West Calumet and Carrie Gosch on polluted land, let plaintiffs live there unwittingly, and failed to warn them about the contamination.

Defendants E.I. du Pont de Nemours and Company and the Chemours Company (collectively, "DuPont") and Hammond Lead Products, LLC, Hammond Group, Inc., Halstab, LLC, and Halox, LLC (collectively, "Hammond Lead") have moved to dismiss Plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 192; DE 194.] For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

### Procedural Background

One might reasonably wonder how a case filed in 2017 is still at the pleading stage. Here's how we got here. Plaintiffs originally filed the case in state court; it was removed to federal court in early 2017. [DE 1; DE 5.] Plaintiffs sought to remand the case [DE 33], but in light of a pending appeal in a related matter, *see Baker et al. v. Atl. Richfield Co. et al.*, Nos. 19-3159, 19-3160, 962 F.3d 937 (7th Cir. 2020), the parties stipulated to stay execution of any remand order. [DE 87; DE 90.] The Court stayed the action pending a ruling in *Baker*. [DE 91.] In *Baker*, Judge Van Bokkelen found that removal was improper based on the federal officer removal statute, 18 U.S.C. § 1442(a)(1), and he therefore remanded the case. On June 18, 2020, the Seventh Circuit reversed and remanded Judge Van Bokkelen's order granting remand in *Baker*, finding that the case could proceed in federal court because removal was proper under the federal officer removal statute. 962 F.3d at 940.

After the Seventh Circuit's opinion in *Baker* was handed down, the stay in this case was lifted, and Judge Van Bokkelen ordered the parties to file supplemental briefing

discussing how, if at all, the Seventh Circuit's decision in *Baker* affected Plaintiffs' position on remand. [DE 103; DE 104.] Plaintiffs subsequently withdrew their motion to remand. [DE 106; DE 107.]

Following this procedural interlude, the originally named defendants sought to dismiss Plaintiffs' operative complaint. [DE 109; DE 112; DE 114; DE 115; DE 117.] In the course of the briefing, Plaintiffs agreed to voluntarily dismiss claims against one of the defendants, Tesoro Refining and Marketing Company. [DE 118.] Judge Van Bokkelen took up the balance of the motions to dismiss, and in September 2021 entered a comprehensive opinion and order granting the motions, in part. [DE 174.] Plaintiffs thereafter sought leave to amend the complaint, which the defendants opposed; the motion for leave to amend was handled by Judge Kolar. [DE 175; DE 185; DE 187.] In the proposed amended complaint, plaintiffs reasserted negligence and negligent infliction of emotional distress claims, and added a cause of action for "medical monitoring," against all defendants. [DE 175-1.]

Judge Kolar granted Plaintiffs leave to amend – but he did so with some important qualifications. [DE 187.] Initially, he concluded that only 3 of the 19 plaintiffs named in the proposed amended complaint alleged a present physical injury related to "exposure" to toxic substances required to state a negligence claim. For example, Davin Bell claimed he actually suffered from blood disorders and developmental disorders for which he was at increased risk due to exposure to the defendants' alleged contamination. *Id.* at 9 (citing DE 175-1, ¶ 21).] So his claim could go forward.

But, for the remaining 16 plaintiffs, they were denied leave to amend to assert negligence claims because any further amendment would be futile. *Id.* at 8–9. While some plaintiffs had "fleshed out the[ir] allegations" of present physical injuries caused by exposure to defendants' alleged contamination of neighboring land "by describing [their] potential injuries in more detail," they nonetheless failed to allege a present physical injury. *Id.* at 8. As a result, only Davin Bell, Nancy Bell, and William C. Scott, Jr. were granted leave to proceed on the negligence count. *Id.* at 9 (citing DE 175-1, ¶¶ 6, 9, 12–30, 97–101, 121).]

As to the Plaintiffs' NIED claims, Judge Kolar observed that the Court had previously ruled that Plaintiffs could not state an NIED claim unless there were allegations of an underlying physical injury. [DE 187 at 10 (citing DE 174 at 14).] However, following Judge Van Bokkelen's opinion and order, the Indiana Supreme Court issued an opinion potentially supporting an alternative interpretation of state law on this issue and which now muddies the water. *See Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022). In light of this new authority, Judge Kolar was not "certain" the proposed NIED claims would fail on a motion to dismiss, so he granted leave to amend with respect to the NIED claims. [DE 187 at 11.] All of the named plaintiffs were granted leave to assert NIED claims. *Id.* at 13. Finally, Judge Kolar denied leave to amend to assert claims for "medical monitoring," finding that Indiana law does not provide an independent cause of action for medical monitoring. *Id.* at 13.

With this complicated procedural background in mind, I now turn to the allegations of Plaintiffs' operative complaint.

### The First Amended Complaint

Plaintiffs are 19 East Chicago residents who previously resided at the West Calumet Housing Complex, a public housing project, or attended Carrie Gosch Elementary School.[2] [DE 188.] West Calumet was constructed in the early 1970s on the site of a former lead refinery, which the EPA later designated as a Superfund Site. The school was adjacent to the housing project and closed in 2016. The City of East Chicago informed residents of West Calumet that they would have to move out of the housing complex in July 2016. In 2017, the complex closed, and in 2018, it was demolished.

The pollution at the heart of this case dates back over a century. From 1910 to 1949, Plaintiffs claim DuPont operated a facility next door that manufactured lead arsenate insecticide, which allegedly "contributed to pollution" of the land. Since 1930, Hammond Lead had produced lead substances on adjacent property, as well, causing hazardous substances to contaminate the land where Plaintiffs' lived.

The EPA has been involved with the Superfund Site for over two decades. In August 2005, the EPA listed among "parties potentially responsible for the contamination at [the Superfund Site]" DuPont, Hammond Lead, and Atlantic Richfield

---

[2] For completeness, the plaintiffs in this case include Ingrid Barbee, Nyasha Harris, V.R. by next friend Ingrid Barbee, V.B. by next friend Ingrid Barbee, Leah Bardney, Janae Young, Jesse Young, J.Y.3 by next friend Leah Bardney, Timothy Bardney, Davin Bell, Nancy Jean Bell, Veeda Chandler, J.Q. by next friend Veeda Chandler, J.C.1 by next friend Veeda Chandler, J.C.2 by next friend Veeda Chandler, Carmencita Robinson, Chance Robinson, Choice Robinson, and William Scott (collectively, "Plaintiffs").

Company and BP West Coast Products, LLC (originally named defendants who were dismissed from the case), along with unidentified "others." In 2009, the Superfund Site was placed on the National Priorities List, and the EPA in 2014 filed suit against ARCO and DuPont in connection with pollution on the Superfund Site. That case was assigned to me, *see* Cause No. 2:14-CV-312-PPS-PRC, and was resolved with a consent decree, pursuant to which the defendants agreed to pay roughly $26 million to clean up the property.

 For decades, residents of West Calumet claim they were unwittingly exposed to contamination directly caused by Defendants. Although Defendants knew of the contamination and its dangers, Plaintiffs assert that they "intentionally" and "actively concealed" the fact and extent of the pollution and the dangers it posed. At the same time, Plaintiffs acknowledge the fact that the government investigated pollution at the Superfund Site for many years, put the Superfund Site on the National Priorities list, and pursued an enforcement action against ARCO and DuPont to remediate the pollution dating back to 1910. Despite all this action around the Superfund Site years prior to the closure of West Calumet, Plaintiffs claim they were first notified of the contamination and its dangers in July 2016, when the Mayor of East Chicago notified them about results of the EPA's testing at the Superfund Site. While the government collected samples from the Superfund Site for many years during its investigation, Plaintiffs claim they only received these samples in 2016.

That November, West Calumet residents sought to intervene in the government's enforcement action, hoping to weigh in on the remediation plan. I denied the motion to intervene and noted that the proposed clean-up plan was mailed to all residents within two miles of the Superfund Site and notice of the lodging of the consent decree was filed years earlier, in September 2014. *See United States v. Atlantic Richfield Co.*, 324 F.R.D. 187, 189, 191–92 (N.D. Ind. 2018). Plaintiffs nonetheless allege that they were unaware of their exposure to hazardous levels of contamination caused by Defendants' pollution at the Superfund Site until they received notice of the EPA's testing results from the City of East Chicago in July 2016.

All of the Plaintiffs have re-asserted claims for negligent infliction of emotional distress. A subset of plaintiffs also seek to assert negligence claims. [*See* DE 188, ¶¶ 107–142.] They claim Defendants, at various times between 1910 and 1985, introduced contaminants (including lead, arsenic, and "other toxins") into the air, soil and/or groundwater, causing them to develop health conditions and/or suffer an increased risk of various illnesses linked to exposure to hazardous levels of lead, along with severe emotional distress due to their fear of exposure to toxic pollution. Defendants allegedly breached a duty not to permit or allow hazardous substances from their facilities to contaminate Plaintiffs' properties and expose Plaintiffs to such substances, as well as a duty to warn Plaintiffs of the release or threatened release of such substances into the soil. *Id.*, ¶¶ 110–117. At bottom, the negligence counts re-assert that Plaintiffs were exposed to hazardous levels of lead "or other toxins" while residing

at West Calumet or attending Carrie Gosch, which Defendants introduced into the air, soil, and/or groundwater decades earlier, and as a consequence they suffer "physical, mental, and emotional harm as a direct and proximate result" of their exposure to lead and other toxins. *Id.*, ¶¶ 105–06. Plaintiffs seek costs of medical monitoring, monetary damages for "personal injuries, pain, and suffering," and an award of punitive damages. *Id.* at 31.

As pertains to Plaintiffs' allegations of present physical injuries caused by Defendants' alleged negligence, I note that the complaint only provides factual allegations about health conditions directly linked to exposure to hazardous levels of lead. [DE 188, ¶¶ 97–104.] Plaintiffs' allegations about injuries linked to "other toxins" are vague and undeveloped. Accordingly, and in keeping with the Court's prior rulings in this case, any named plaintiff asserting a claim of negligence must have adequately alleged a present physical injury included among the illnesses caused by exposure to hazardous levels of lead.

## Discussion

Before diving into the substance of the pending motions, let's start with a brief discussion of the standards that govern my decisionmaking. Under Federal Rule of Civil Procedure 8(a), Plaintiffs' complaint must contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

## I.    Negligence Claims

While Judge Kolar expressly granted leave to assert negligence claims as to only 3 plaintiffs named in the proposed amended complaint, 15 plaintiffs seek to assert negligence claims in the First Amended Complaint. [DE 188, ¶ 108.] Under Indiana law, a negligence claim requires a showing that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty by allowing conduct to fall below the

applicable standard of care; and (3) the plaintiff suffered compensable injury proximately caused by the defendant's breach. *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). Defendants first contest Plaintiffs' claims that they owed a duty of care. They don't appear to question Judge Van Bokkelen's prior ruling that Plaintiffs adequately assert a duty not to contaminate. However, DuPont asserts Plaintiffs fail to adequately plead a duty to warn. [DE 193 at 14–16.]

Essentially, DuPont asks me to ignore Plaintiffs' specific allegation that Defendants kept the pollution a secret from Plaintiffs, and they were only informed of the extent of the pollution in 2016, because this allegation is "conclusory" and "implausible" in context. To be sure, there are facts alleged in the complaint detailing a history of EPA investigation and enforcement activity in connection with the Superfund Site. It's possible that such activity reasonably put at least some of the named plaintiffs on notice of the contamination of the land prior to receiving a letter from the City of East Chicago in 2016. But the Plaintiffs tell me a different story, and it strikes me as a plausible one.

It may be that evidence will be produced showing Plaintiffs knew of the contamination based on the EPA listing the Superfund Site on its National Priorities list, or based on its enforcement action filed a little over two years prior to this suit. But the question at this stage is whether there are *allegations*—not evidence—that Plaintiffs could not have plausibly known of their injuries caused by lead exposure and the Defendants intentional failure to inform Plaintiffs. Whether these allegations will be proved with

evidence is anybody's guess. But for now, it's enough to say that it is plausible. As a result, it would be premature to dismiss Plaintiffs' negligence claims based on a failure-to-warn theory. With the benefit of a more fulsome record after discovery has been taken, Defendants can of course raise the argument anew at summary judgment. [*Accord* DE 174 at 11.]

Defendants also challenge Plaintiffs' claims that they suffered injuries proximately caused by their alleged introduction of hazardous levels of lead and "other toxins" on their property. As I previously pointed out, Plaintiffs do not meaningfully allege a connection between their alleged injuries and any contaminant other than lead. Because Plaintiffs fail to allege facts clearly linking their general categories of alleged injuries to exposure to contaminants other than lead, any injuries allegedly caused by the introduction of those substances onto the land are entirely speculative. Accordingly, Plaintiffs' negligence claims based on "other toxins," aside from lead, are dismissed with prejudice for failure to plead causation.

On the other hand, for those Plaintiffs who have specifically alleged injuries based on ingestion of hazardous levels of lead, those claims must survive. Under Indiana law, proximate causation requires both "factual causation" and "legal causation." *Fifth Third Bank v. CSX Corp.*, 306 F. Supp. 2d 841, 853 (N.D. Ind. 2004). *See also Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 445 (7th Cir. 2009) ("Courts remain entirely free to dismiss a claim . . . where the pleadings do not permit a reasonable inference of proximate cause."). As courts in this case and elsewhere across this district have repeatedly noted,

it is not necessary for Defendants' contamination to be "*the* proximate cause, but only *a* proximate cause, of the Plaintiffs' injuries to succeed on a claim of negligence." *See Rolan v. Atl. Richfield Co.*, 2017 WL 3191791, at *18 (N.D. Ind. July 26, 2017) (citing *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010)) (finding resolution of causation issue required "a more factually intensive inquiry" inappropriate for resolution at the pleadings). [*See also* DE 174 at 12–13.]

Defendants take issue with the lack of detail linking their alleged pollution decades ago to Plaintiffs' present physical injuries caused by lead exposure. DuPont notes that Plaintiffs repeatedly allege that they ingested lead that was introduced onto their land by Defendants. But, DuPont argues, these "conclusory and repetitive allegations . . . do not make their causation allegations plausible" – and I should peel the onion back further to assess if the allegation is plausible in the proper "context." [DE 193 at 13–14.] DuPont notes the complaint alleges the City of East Chicago offered lead testing to all West Calumet residents, but Plaintiffs do not claim that they took advantage of this testing or were found to have elevated lead levels as a result of such testing. *Id.* In other words, because Plaintiffs have had "years" to develop the factual foundation of their claims, and still fail to specifically articulate that they have developed a medical condition as a result of exposure to particular contaminants left there by the Defendants, I am told their claims must fail for lack of causation. *See id.*

Judge Kolar disagreed. He found (and I agree) that at least a subset of the named plaintiffs—Davin Bell, Nancy Bell, and William C. Scott, Jr.— specifically asserted that

12

they ingested hazardous levels of lead, that Defendants introduced this hazardous material onto their property, and they suffer illnesses of the variety caused by exposure to hazardous levels of lead. The story Plaintiffs tell strikes me as plausible, even if Defendants would prefer additional factual allegations more specifically tying *their* alleged lead contamination to Plaintiffs' claimed injuries. At this stage, the allegations put Defendants on notice of Plaintiffs' theory of harm, and that is all Rule 8(a) requires. In sum, following the lead of fellow courts in this district evaluating virtually identical claims, I decline to dismiss Plaintiffs' negligence claims based on exposure to hazardous levels of lead due to a failure to adequately plead causation.

But as for the remaining "Count I Plaintiffs," Judge Kolar expressly declined leave to amend to re-assert negligence claims for those individuals. [DE 187 at 8–10; *see* DE 175-1, ¶¶ 21, 22, 30.] He made it clear that only 3 plaintiffs presented allegations of present physical injuries in keeping with Judge Van Bokkelen's prior rulings. The balance of Plaintiffs attempting to assert negligence claims were denied leave to amend with prejudice, because Plaintiffs' proposed amendment was "futile." [DE 187 at 8.]

Defendants request that I dismiss the negligence claims asserted by any "Count I Plaintiffs" who were expressly denied leave to re-assert negligence claims, because those claims plainly exceed the scope of Judge Kolar's order granting leave to amend. [DE 193 at 12; DE 195 at 8–9.] Plaintiffs were denied leave to amend for several of these individual plaintiffs after finding their new allegations failed to do anything but elaborate on their "*potential* injuries in more detail." Frankly, I cannot make heads or tails

of Plaintiffs' decision to re-assert negligence claims on behalf of named plaintiffs for whom the Court expressly denied leave to amend. From the tenor of their response brief, it seems that Plaintiffs believe that all of the "Count I Plaintiffs" *do* adequately allege a present physical injury. Yet Plaintiffs make no attempt to refute the notion that the Court previously denied leave for a subset of "Class I Plaintiffs" to re-assert negligence claims. The Court has already ruled, and I see no reason to question, that allegations of emotional distress as an injury are insufficient to sustain a standalone negligence claim under applicable law. Tracking the allegations from the proposed First Amended Complaint to the operative complaint, it is clear that leave to amend was expressly denied for the majority of "Class I Plaintiffs." Only a subset of the Class I Plaintiffs were permitted to re-plead.

Accordingly, only plaintiffs Davin Bell, Nancy Bell, and William C. Scott, Jr. may proceed with their negligence claims. I agree that those are the only named plaintiffs who sufficiently allege present physical injury to state an ordinary negligence claim against Defendants. The balance of the Class I Plaintiffs' negligence claims are dismissed with prejudice for failure to adequately allege injury.

## II.     NIED Claims

Let's shift gears and examine Plaintiffs' negligent infliction of emotional distress claims. Judge Van Bokkelen dismissed Plaintiffs' initial NIED claims, finding there could be no NIED claim under Indiana law unless accompanied by a properly pled, "ordinary" negligence claim. [DE 174 at 14.] While not all Plaintiffs have a viable negligence claim,

all of them nevertheless seek to re-assert NIED claims. They claim that Defendants'

contamination has caused them "significant emotional distress," including fear of

contracting illnesses associated with exposure to the contaminants, fear that their family

members and guests will contract future illnesses associated with such exposure, and

generalized fear that the "contamination has affected their health." [DE 188, ¶ 141.] They

further assert medical monitoring is included as a facet of damages for this type of

negligence claim under state law. *Id.*, ¶ 142.

In *Spangler v. Bechtel*, the Indiana Supreme Court observed, "The right to seek

damages for emotional distress in actions for negligence *often referred to as actions for*

*negligent infliction of emotional distress*, is carefully circumscribed under Indiana

jurisprudence." 958 N.E.2d 458, 466 (Ind. 2011) (emphasis added). Indiana law had

"never permitted . . . an action seeking damages for emotional distress predicated upon

a breach of an alleged duty not to inflict emotional injury on another," and such

"independent, stand-alone actions for negligent infliction of emotional distress are not

cognizable." *Id.*

As Judge Van Bokkelen previously observed, if *Spangler* controls, the result is

straightforward – only those named plaintiffs with cognizable negligence claims based

on their present physical injuries may also pursue NIED claims against Defendants. *See,*

*e.g.*, *Vestal v. Heart of CarDon, LLC*, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018)

(applying *Spangler*) (NIED "is not a stand-alone cause of action, but instead is permitted .

. . where the 'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact'

15

upon the plaintiff"). But, again, things are not always so simple. As highlighted by Judge Kolar in granting Plaintiffs leave to amend, he believed Indiana law governing NIED claims may have been altered by the Indiana Supreme Court's decision in *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022). To be more specific about it, Judge Kolar was "uncertain" about whether *Community Health* changed the landscape on NIED claims. To his credit, and out of an abundance of caution, Judge Kolar allowed the complaint to be amended so the validity of the standalone NIED claims could be fully briefed for my consideration on the pending motions to dismiss.

In *Community Health*, the plaintiffs sued a healthcare provider for negligence based on an employee accessing their medical records without authorization. The plaintiffs' negligence claims sounded in theories of direct liability for negligent supervision, training, and retention, as well as vicarious liability. They did not allege a physical impact or injury – just that they suffered emotional distress as a result of the defendant's negligence with respect to its handling of their medical records. *Id.* at 379. The Court noted that under *Spangler*, "emotional-distress damages are recoverable in negligence-based claims only when a party can satisfy (1) the modified-impact rule or (2) the bystander rule." *Id.* (citing 958 N.E.2d at 466, 471).

I can set the bystander rule aside for our purposes. Under that rule, a standalone NIED claim is permitted absent a direct physical impact on the plaintiff only if the plaintiff has "witnessed or come to the scene soon after the death or severe injury of certain classes of relatives." *Spangler*, 958 N.E.2d at 467. Suppose a mother is at a bus

stop with her child when she witnesses her child being run over by an inattentive motorist who is texting and driving. The mother in that case would have a viable NIED claim as a bystander. There is no plausible claim that any of the Plaintiffs in this case can be reasonably called bystanders.

But what about the other theory of negligent infliction of emotional distress – the modified-impact rule? *Community Health* itself provides little analysis of the rule, beyond noting that *Spangler* requires that the plaintiff "personally sustained a physical impact," in addition to emotional distress damages. 185 N.E.3d at 379 (citing 958 N.E.2d at 467). The Court found in straightforward fashion that the "undisputed facts establish[ed] that [the plaintiffs] suffered no physical impact" as a result of the misuse of their private medical records.

The Supreme Court previously explained that this rule "is known as the 'impact rule' because of the requirement that there be some physical impact on the plaintiff before recovery for mental trauma will be allowed," and it has been the law of the land in Indiana for over "one hundred years." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991) (citing *Kalen v. Terre Haute & I.R.R. Co.*, 47 N.E. 694 (Ind. Ct. App. 1897)). "The rule, as applied in Indiana, has three elements: (1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress." *Id.* (citing *Boston v. Chesapeake & O. Ry.*, 61 N.E.2d 326, 327 (Ind. 1945)).

*Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006) is a useful illustration cited favorably by the Court in *Spangler*. In *Cook*, the plaintiffs were involved in a harrowing incident on an aircraft shortly after the 9/11 tragedy. Essentially, the plaintiffs contended that the airline (and others) were negligent in allowing another passenger to board the aircraft who later engaged in menacing behavior in flight. That passenger marched up and down the aisle, threatened others on board and perpetually smoked cigarettes despite rules to the contrary. 857 N.E.2d at 991–92. The plaintiffs were justifiably terrified by the incident. They argued that breathing smoke from a lit cigarette and experiencing vibrations from stomping feet caused a direct physical impact, as well as a "constructive impact by virtue of the physical effects on the [plaintiffs'] vital body functions," like breathing, heart rate, and acuteness of their senses. *Id.* at 998.

With this backdrop, the Court examined case law on the physical impact requirement, *id.* at 998–99, and concluded that "constructive impact" in the form of "physical changes" can satisfy the rule. However, the plaintiffs merely alleged "what can best be described as the human body's natural response to fear and anxiety," which fell short of a "physical change" like, for example, "the destruction of healthy lung tissue" as a result of a physician's failure to diagnose a plaintiff's lung cancer. *Id.* at 998 (citing *Alexander v. Scheid*, 726 N.E.2d 272, 284 (Ind. 2000) (holding that patient suffering from the destruction of healthy lung tissue due to physician's failure to diagnose cancer was sufficient for negligent infliction of emotional distress)). Applied to the complaint in this case, only the subset of named plaintiffs who have adequately alleged manifest health

18

conditions linked to exposure to hazardous levels of lead plead facts from which one could plausibly infer "physical changes" that form a "constructive" physical impact to state a NIED claim.

The Court in *Cook* then considered whether smelling cigarette smoke and feeling floor vibrations could form a direct physical impact. 857 N.E.2d at 999. While the Court noted plaintiffs' theory "at the very least . . . stretches the outer limits of the impact requirement," it accepted that plaintiffs may experience sensations related to exposure to smoke and vibrations that "may be characterized as physical impact," even if "certainly very 'slight,'" and went on to consider whether plaintiffs' alleged "mental anguish is 'not likely speculative, exaggerated, fictitious, or unforeseeable.'" *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2000)). The evidence suggested plaintiffs' fear and anxiety were real but transitory, and they never sought medical treatment for their alleged impacts. The Court accordingly concluded "the physical impact in this case was slight to nonexistent," and "speculative," so "allowing an emotional distress claim to proceed based on . . . lingering mental anguish would essentially abrogate the requirements of Indiana's modified impact rule." *Id.* at 1000.

As I see it, the takeaway from cases like *Cook* is just how skeptical the Indiana Supreme Court is of standalone NIED claims. The Court acknowledged that NIED claims based on emotional distress alone face an uphill climb, and to the extent a plaintiff can assert a "direct impact" based on emotional distress, such a claim "stretches the outer limits of the impact requirement." 857 N.E.2d at 999. Adding to this, courts

evaluating similar claims involving asbestos exposure have concluded that merely asserting the "possibility" that an individual was exposed to asbestos and that exposure "may or may not produce physical injury" do not satisfy the modified-impact rule; but that actual exposure could form a direct impact under the rule. *Adams v. Clean Air Sys., Inc.*, 586 N.E.2d 940, 942 (Ind. Ct. App. 1992). *See also Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185, 189 (1998) (construing *Adams*).

All of this brings me back to *Community Health*, and whether it worked a change in the law that permits all of the named plaintiffs to move forward with NIED claims, regardless of whether they allege underlying physical injuries sufficient to state ordinary negligence claims. I fail to see how it does. The case does not even meaningfully evaluate the "physical impact" requirement of the modified-impact rule and concludes in a single sentence that, under *Spangler*, the plaintiffs did not suffer any "physical impact themselves" as a result of the misuse of their medical records. 185 N.E.3d at 379. It followed, therefore, that they could state a claim for NIED. *Id*.

Since *Community Health* was handed down, the Indiana Court of Appeals has continued to hold that negligence claims alleging "only emotional distress damages" (*i.e.*, what Indiana law refers to as a NIED claim) "are subject to the modified-impact rule," and reaffirmed that the modified-impact rule "requires that the plaintiff sustain a physical impact." *Fox v. Franciscan All., Inc.*, 204 N.E.3d 320, 327 (Ind. Ct. App. 2023) (granting summary judgment on negligence claims, including NIED claim, based on defendant's invasion of plaintiffs' privacy, holding that "[l]oss of privacy does not

consist of a physical impact [under *Community Health*], and it is undisputed that Plaintiffs here did not sustain physical impacts").

In sum, in the context of the authority that precedes it, it seems clear that *Community Health* is simply an application of the modified-impact rule, not a meaningful change in the law. As such, I see no reason to depart from the reasoning of Judge Van Bokkelen's prior order dismissing Plaintiffs' NIED claims to the extent they failed to adequately allege a standalone negligence claim. [DE 174 at 14.]

Accordingly, only Davin Bell, Nancy Bell, and William C. Scott, Jr.—who, as previously explained, are the only named plaintiffs with viable "ordinary" negligence claims—may proceed with NIED claims. All of the other named plaintiffs' NIED claims will be dismissed with prejudice, for failure to state a claim.

### III.     Statute of Limitations

Defendants' final argument for dismissal of Plaintiffs' claims is that the adult plaintiffs failed to file suit within the two-year statute of limitations. The limitations period started when Plaintiffs knew or, in the exercise of ordinary diligence, should have known of their injuries. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (citing *Wheling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind. 1992)) (holding it is only necessary that "some ascertainable damage has occurred"). In asserting this affirmative defense, *see U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003), DuPont argues that "two key events" should have put Plaintiffs on notice to file their claims –

the EPA listing the Superfund Site on the National Priorities List in April 2009, and the EPA's 2014 enforcement action against ARCO and DuPont. [DE 193 at 26.]

Analytically, this argument presents the same issues I have already considered in connection with Plaintiffs' negligence claims based on Defendants' alleged failure to warn them of the release or threatened release of lead contamination onto their land. Judge Van Bokkelen previously considered the same argument in light of the same allegations in the complaint and declined to dismiss on statute of limitations grounds, crediting Plaintiffs' allegations that they only became aware of the contamination or should have become aware of the contamination in July 2016, within the limitations period. [DE 174 at 5–7.] This ruling is further buttressed by a decision of the Indiana Court of Appeals in a parallel case. *State v. Alvarez*, 150 N.E.3d 206, 215–17 (Ind. Ct. App. 2020).

In short, I see no reason to depart from this reasoning, in light of the similarities between the relevant allegations. Even if Plaintiffs' allegations include facts that suggest Defendants may have a strong defense on the merits, I credit (at this point) their specific allegation that they did not discover their alleged exposure to lead contamination caused by Defendants until July 25, 2016, and therefore decline to dismiss the adult plaintiffs' claims under the two-year statute of limitations.

**ACCORDINGLY:**

The pending Motions to Dismiss [DE 192; DE 194] filed by DuPont and Hammond Lead are **GRANTED IN PART**, as follows:

With respect to Count I, only the individual plaintiffs Davin Bell, Nancy Bell, and William C. Scott, Jr. were granted leave to amend and state a claim of negligence based on allegations of present physical injuries caused by Defendants' alleged breaches. [*See* DE 188, ¶¶ 21–22, 30.] Count I is **DISMISSED WITH PREJUDICE** as to any other named plaintiffs, for failure to state a claim upon which relief can be granted.

With respect to Count II, only individual plaintiffs Davin Bell, Nancy Bell, and William C. Scott, Jr. state a claim of ordinary negligence and sufficiently allege a direct physical impact, in addition to emotional distress, sufficient to state a NIED claim under Indiana's modified-impact rule. Count II is therefore **DISMISSED WITH PREJUDICE** as to any other named plaintiffs, for failure to state a claim upon which relief can be granted.

In all other respects, the Motions to Dismiss [DE 192; DE 194] are **DENIED**.

**SO ORDERED**.

ENTERED: October 18, 2023.

 /s/ Philip P. Simon           
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT